# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| VICENTE & CINDY ARRIAGA | ) | |
| | ) | 09 C 2115 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A., et al., | ) | |
| | ) | Hon. Charles R. Norgle |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court are Defendants Wells Fargo, Mortgage Electronic Registrations

Systems ("MERS"), Draper and Kramer Mortgage Corporation ("Draper"), and

E*Trade's (collectively, Defendants) motions to dismiss *pro se* Plaintiffs Vicente and

Cindy Arriaga's Second Amended Complaint ("Complaint") pursuant to Federal Rule of

Civil Procedure 12(b)(6). For the following reasons, Defendants' motions are granted in

part and denied in part.

## I. INTRODUCTION

### A. Facts

Plaintiffs allege the following facts in their Complaint. On July 18, 2005,

Plaintiffs entered into a $328,000 mortgage loan ("Primary Loan") with Draper, secured

by real property located at 2841 N. Springfield Avenue, Chicago, IL 95747 ("Subject

Property") as well as by personal property. On August 18, 2006, Plaintiffs entered into a

$70,000 home equity line of credit loan ("HELOC") with E*Trade, also secured by the

Subject Property and personal property. Plaintiffs claim that "[b]oth transactions were

qualified for and entered into based on required lender-procured appraisal reports of the value of our principle residence and real estate, and both resulted in mortgage liens against our personal property and our home." Compl. ¶ 15. On November 24, 2008, MERS, as nominee for Draper, assigned the Primary Loan to Wells Fargo.

Since 2005, Plaintiffs have made numerous requests to Defendants by telephone and in writing regarding the status of their mortgage. Plaintiffs do not claim that they never received monthly or periodic statements. In August, November, and December of 2005, Plaintiffs sent letters to Draper requesting a copy of the appraisal used in connection with the origination of their loan. Plaintiffs allege that their letters were "largely ignored" until they "discovered that the inability to sell our home for a fair price was caused by willful actions of the Defendants." Id. ¶ 14. Plaintiffs maintain that, "due to the lenders' intentional overvaluations of our home, the mortgage amounts were hundreds of thousands more than our home's market value and we were not able to sell." Id. ¶ 18. Plaintiffs allege that the appraisal was fraudulently inflated by Draper to induce them to enter into the loan transaction. The "hundreds of thousands more" apparently relate to the $328,000 and $70,000 loans.

On April 9, 2008, three years after purchasing the Subject Property, Plaintiffs sent a letter to Wells Fargo advising that they wanted to "cancel [their] loan agreement" and "cancel this mortgage." Id. ¶¶ 31, 34. Plaintiffs sent another letter to Wells Fargo on July 21, 2008, wherein they included the monthly mortgage payment due for July 2008 and advised that it would be Plaintiffs' last payment unless Defendants contacted them in writing to address their various concerns. Id. On December 1, 2008, Wells Fargo filed a foreclosure action against Plaintiffs and E*Trade, which remains pending in the Circuit

Court of Cook County. <u>See Wells Fargo Bank, NA v. Arriaga</u>, No. 08 CH 44742, (Ill. Cir. Ct. 2008).

## B. Procedural History

Plaintiffs filed the original complaint in this matter on April 6, 2009, and an amended complaint on May 29, 2009. Between July and September of 2009, all Defendants moved to dismiss the amended complaint. On October 16, 2009, Plaintiffs filed a motion for leave to file a second amended complaint. On November 5, 2009, Defendants' motions to dismiss the amended complaint were granted without prejudice and Plaintiffs were granted leave to submit a proposed second amended complaint on or before November 25, 2009. Plaintiffs failed to meet that deadline and filed a purported second amended complaint on December 1, 2009.

On August 19, 2010, the Court – after noting that Plaintiffs' proposed second amended complaint was fifty-eight pages and contained 330 numbered paragraphs and thirteen separate pleas for relief – gave Plaintiffs one final opportunity to submit a complaint in compliance with Rule 8(a)(2).

Plaintiffs filed the instant twenty-seven page, eight-count Complaint on September 30, 2010. Count I alleges that Draper, Wells Fargo, E*Trade, and unknown parties violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. Count II is a quiet title claim against Wells Fargo, MERS, Draper, E*Trade, and unknown parties. Count III alleges that Draper and Wells Fargo violated the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. Count IV alleges that Draper violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*. Counts V-VII allege common law fraud claims against all Defendants. Finally, Count VIII is a

claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. against Wells Fargo.

All Defendants have moved to dismiss all of the above claims. On April 21, 2011, the Court dismissed Plaintiffs' TILA rescission claims with prejudice. This opinion addresses each of the remaining issues in Defendants' motions.

## II. DISCUSSION

### A. Standard of Decision

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47, (1957)). Courts must approach Rule 12(b)(6) motions "by construing the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." Hecker v. Deere & Co., 556 F.3d 575, 580 (7th Cir. 2009) (quotations omitted). Finally, "[i]t is the well-settled law of this circuit that *pro se* complaints are to be liberally construed . . . [and] may only be dismissed if it is beyond doubt that there is no set of facts under which the plaintiff could obtain relief." McCormick v. City of Chi., 230 F.3d 319, 325 (7th Cir. 2000) (citations omitted).

**B. Actual and Statutory Damages under TILA (Count I)**

Plaintiffs seek TILA damages against Draper, Wells Fargo, and E*Trade. Plaintiffs allege that Draper's TILA disclosure document and notice of right to cancel each failed to disclose that Draper had a security interest in Plaintiffs' personal property. Compl. ¶¶ 26-28. Plaintiffs also allege that Draper provided only Vicente Arriaga with a copy of the TILA disclosure and the notice of right to cancel when Vicente and Cindy should each have received their own copy. Id. ¶¶ 29, 30. Plaintiffs allege that Wells Fargo, as Draper's assignee, is jointly liable for the same violations. Finally, Plaintiffs seek TILA damages against E*Trade for its alleged failure to: (1) deliver any notices of right to cancel, (2) disclose its secured interest in their personal property, (3) deliver any copies of signed loan documents, and (4) rescind the HELOC. Compl. ¶¶ 35-38.

In response, Defendants argue that Plaintiffs' TILA damages claims are time barred. "[D]ismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (citation omitted). "All reasonable inferences must be drawn in plaintiffs' favor when a defendant seeks a dismissal because the claim is time-barred." Spann v. Cmty. Bank of N. Virginia, No. 03-7022, 2004 WL 691785, at *2 (N.D. Ill. Mar. 30, 2004) (citing Cornfield by Lewis v. Consol. High Sch. Dist. No. 230, 991 F.2d 1316, 1324 (7th Cir. 1993)).

Actions under TILA may be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "TILA actions do not accrue when a plaintiff discovers his injury or could have discovered his injury with reasonable

diligence." Harlan v. Al Piemonte Nissan, Inc., No. 02 C 2265, 2002 WL 31155061, at *5 (N.D. Ill. Sept. 26, 2002). Rather, "TILA violations accrue on the date upon which the loan instrument is signed." Id.; see also Salois v. Dime Savings Bank, 128 F.3d 20, 25 (1st Cir. 1997) (holding that a TILA claim accrues for statute of limitations purposes when parties signed mortgage loan documents); King v. State of California, 784 F.2d 910, 914 (9th Cir. 1986) (same).

Plaintiffs entered into the Primary Loan on July 18, 2005 and the HELOC on August 18, 2006, but did not bring suit until April 6, 2009. Plaintiffs' claims for money damages would therefore be time-barred under the plain language of the statute. In response, Plaintiffs argue that the statute should be tolled under the theory of equitable estoppel. Plaintiffs' argument is unavailing.

"Equitable estoppel, a subset of which is fraudulent concealment, applies when the plaintiff shows that the defendant misled him or took active steps to prevent him from filing suit before the statutory period expired." Asher v. Chase Bank USA, N.A, 310 F. App'x 912, 917 (7th Cir. 2009) (citing Smith v. Potter, 445 F.3d 1000, 1010 (7th Cir. 2006); Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-51 (7th Cir. 1990)). A defendant takes active steps to mislead when, for example, it hides evidence or promises not to plead the statute of limitations. Speer v. Rand McNally & Co., 123 F.3d 658, 663 (7th Cir. 1997). The "doctrine contemplates that the plaintiff has discovered, or . . . should have discovered, that the defendant injured him, and denotes efforts by the defendant – above and beyond the wrongdoing upon which the plaintiff's claim is founded – to prevent the plaintiff from suing in time." Hentosh v. Herman M. Finch Univ. of Health Sci./The Chi. Med. Sch., 167 F.3d 1170, 1174 (7th Cir. 1999) (citations

and quotations omitted). The alleged acts of fraudulent concealment must constitute more than a failure to disclose the alleged initial fraudulent conduct. See Sharp v. United Airlines, Inc., 236 F.3d 368, 372 (7th Cir. 2001). Courts should apply equitable estoppel "sparingly." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

The standard of specificity in alleging the basis for equitable estoppel is heightened by application of Rule 9(b), which requires the circumstances of fraud to be pled with particularity. See Greer v. Bank One, No. 01-C-7352, 2002 WL 1732366, at *3 (N.D. Ill. July 25, 2002) (citing Ackerman v. Nw. Mut. Life Ins. Co., 172 F.3d 467, 469 (7th Cir. 1999)). To satisfy Rule 9(b), a plaintiff must state "'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc., 536 F.3d 663, 668 (7th Cir. 2008) (quoting Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997)). In the context of tolling, "[a] plaintiff must plead with Rule 9(b) particularity the specific conduct of the defendant that entitles the plaintiff to toll the limitations period for fraudulent concealment." Whitley v. Taylor Bean & Whitacker Mortg. Corp., 607 F. Supp. 2d 885, 900 (N.D. Ill. 2009) (citing Cada, 920 F.2d at 451). "A complaint should distinctly state what the discovered fraud actually was and when the plaintiff discovered it, so that the Court may evaluate whether he could have discovered it through the exercise of due diligence." Greer, 2002 WL 1732366, at *3 (citations omitted).

The Complaint falls short of the above standards. With respect to Draper and Wells Fargo, Plaintiffs argue that "deceitful delaying conduct and active concealment of

important information . . . prevented Plaintiffs from discovering the TILA violations, and Plaintiffs' claims should be tolled to April, 2008 when we were enabled to make discovery of the frauds and actionable violations." Pl.'s Resp. to Draper's Mot. to Dismiss 2. Plaintiffs allege no facts explaining how Draper allegedly concealed the substantive violations. As Draper and Wells Fargo both argue, the alleged facts giving rise to Plaintiffs' claims – deficient disclosures and failure to provide copies – would have been known to Plaintiffs at or around the time of closing. Plaintiffs do not allege particular facts to establish that Draper or Wells Fargo prevented them from suing in time or took "active steps beyond a mere non-disclosure or failure to disclose the alleged initial fraudulent conduct." Greer, 2002 WL 1732366, at *2.

Instead, Plaintiffs argue that because they are *pro se* they were "unaware that Draper's conduct was wrongful and actionable under law, and we did not know what paperwork we were supposed to receive because we are not Real Estate Professional or lenders." Pl.'s Resp. to Draper's Mot. to Dismiss 2. Plaintiffs' lack of knowledge in real estate and law does not excuse them from exercising due diligence regarding the discovery of TILA violations. See, e.g., Williams v. Sims, 390 F.3d 958, 963 (7th Cir. 2004); Goldstandt v. Bear Stearns & Co., 522 F.2d 1265, 1269 (7th Cir. 1975) ("[I]t is well established that a plaintiff may not merely rely upon his own unawareness of the facts or law to toll the statute."). Plaintiffs' failure to plead a specific tolling scenario undermines their claims against Draper and Wells Fargo.

Similarly, the facts giving rise to Plaintiffs' claims against E*Trade would have been known to Plaintiffs at or around the time they entered into the HELOC. As with Draper, Plaintiffs fail to allege particular facts to establish that E*Trade prevented them

from suing in time or took active steps to mislead them by hiding evidence. Plaintiffs have thus failed to plead equitable estoppel as a basis upon which to toll the statute of limitations in this case. Plaintiffs' TILA damages claims (Count I) are therefore dismissed.

## C. RESPA Claims Against Draper and Wells Fargo (Count III)

"RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." Catalan v. GMAC Mortg. Corp., 629 F.3d 676, 680 (7th Cir. 2011). Plaintiffs allege that both Draper and Wells Fargo violated RESPA by failing to provide a notice of transfer as required by 12 U.S.C. § 2605(b) and (c). Plaintiffs further allege that Wells Fargo failed to properly respond to their qualified written requests as required by 12 U.S.C. § 2605(e).

### 1. Notice of Transfer Claims Against Draper and Wells Fargo

RESPA requires that borrowers receive "notice by both transferor and transferee when their loan is transferred to a new lender or servicer." Catalan, 629 F.3d at 680 (citing 12 U.S.C. § 2605(b) and (c)). Under § 2605(b), the servicer of a federally related mortgage loan (in this case, Draper) must give notice to the borrower of the assignment or transfer of the loan "not less than 15 days before the effective date of transfer of the . . . loan." 12 U.S .C. § 2605(b)(1), (2)(A). Under § 2605(c), the transferee of a federally related mortgage loan (in this case, Wells Fargo) "shall notify the borrower of any such assignment, sale or transfer . . . not more than 15 days after the effective date of transfer of the servicing of the mortgage loan." 12 U.S.C. § 2605(c)(1), (2).

Plaintiffs allege that Draper did not provide them with notice as required by § 2605(b) and that Wells Fargo did not provide them with notice as required by

§ 2605(c). Compl. ¶¶ 50, 53. Both Draper and Wells Fargo argue that these claims are time-barred under 12 U.S.C. § 2614, which provides that any action pursuant to § 2605 must be brought within three years of the date of the violation. Plaintiffs acknowledge that they were informed of the transfer from Draper to Wells Fargo during a phone call with Draper in mid-August 2005. Id. ¶ 50. Pursuant to § 2605(b)(2)(A), Draper was required to notify Plaintiffs in writing not less than 15 days before the effective date of the transfer. Pursuant to § 2605(c)(2), Wells Fargo was required to notify Plaintiffs in writing within fifteen days after the date of transfer. Accordingly, with respect to both Draper and Wells Fargo, the statutory violation occurred sometime between mid-August and early September 2005. Plaintiffs' § 2605 claims with respect to both Draper and Wells Fargo therefore expired, at the latest, in early September 2008. Because the initial complaint was filed on April 6, 2009, Plaintiffs' § 2605 claims are time-barred.

Plaintiffs' contention that equitable tolling should apply to their RESPA notice of transfer claim is without merit. Plaintiffs argue that their RESPA claim should "be tolled to the date on which Plaintiffs were enabled to discover that Draper's actions were wrongful and actionable." Pl.'s Resp. to Draper's Mot. to Dismiss 4. The Complaint indicates that all of the facts underlying the RESPA notice of transfer claim were known to Plaintiffs in August 2005. As with the TILA claim, Plaintiffs' ignorance of the law is not a ground upon which to toll the statute. Plaintiffs' § 2605 RESPA claim is therefore dismissed.

### 2. *Qualified Written Request Claims against Wells Fargo*

Plaintiffs also contend that Wells Fargo violated RESPA by failing to respond promptly to seven letters sent between February 2006 and November 2008. RESPA

provides that a loan servicer that receives a qualified written request ("QWR") from the borrower for information relating to the servicing of a loan shall provide a written response acknowledging receipt of the correspondence within twenty days. 12 U.S.C. § 2605(e)(1)(A). Further, not later than sixty days after the receipt from any borrower of any QWR, the servicer shall conduct an investigation and provide the borrower with a written explanation or clarification. Id. § 2605(e)(2).

Plaintiffs allege that each of the seven letters was a QWR and that Wells Fargo violated RESPA by failing to respond to each of them. Wells Fargo argues that it did not violate RESPA because none of the letters constitute QWRs.

RESPA defines a QWR as follows:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that— (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). According to the Seventh Circuit:

> RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. The language of the provision is broad and clear. To be a qualified written request, a written correspondence must reasonably identify the borrower and account and must "include a statement of the reasons for the belief of the borrower, *to the extent applicable,* that the account is in error <u>or</u> provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (emphasis added). Any reasonably stated written request for account information can be a qualified written request. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond.

Catalan, 629 F.3d at 687 (citations omitted). According to Plaintiffs, all seven letters stated their "name, address, account number, and reason for dispute or request for account billing information." Compl. ¶ 56. Plaintiffs specifically refer the Court to letters sent in/on: (1) February 2006, (2) December 30, 2006, (3) March 2007, (4) August 15, 2007, (5) December 30, 2007, (6) June 1, 2008, and (7) November 2008. Id. Plaintiffs do not attach these letters as exhibits to the Complaint but refer the Court to attachments at pages 67-74 and 85 of their initial complaint. Those pages contain nine letters, five of which correspond to the dates above and four of which do not. Wells Fargo also attaches what it believes to be the above letters to its motion to dismiss. Some of those letters correspond to the above dates, others do not, and one appears in Wells Fargo's list but not Plaintiffs' lists. In light of this muddled record, the Court declines to consider the letters at this stage. Plaintiffs may survive a motion to dismiss without attaching QWRs to their complaint. See, e.g., Pelayo v. Home Capital Funding, No. 08-CV-2030 IEF (POR), 2009 WL 1459419, at *3 (S.D. Cal. May 22, 2009) ("[U]nder notice pleading standards, Plaintiff's RESPA claim does not fail because she failed to attach her QWRs to the complaint."). Plaintiffs allege that each letter states their name and account number and identifies either a dispute in the account or a request for information. Because these allegations are sufficient to survive dismissal under Catalan, Wells Fargo's motion to dismiss Plaintiffs' RESPA QWR claim is denied.

**D. FCRA Claim Against Wells Fargo (Count VIII)**

The FCRA imposes duties upon persons who furnish information to credit reporting agencies. 15 U.S.C. § 1681s-2. Upon notice of a dispute from a credit reporting agency, § 1681s-2(b)(1) requires the entity furnishing the information to

conduct an investigation regarding the dispute and to report its findings. Gulley v. Pierce & Assoc., P.C., No. 11-1336, 2011 WL 3624995, at *2 (7th Cir. Aug. 17, 2011). The duties imposed on providers of information under § 1681s-2(b) arise only after the entity furnishing the information receives notice from a consumer reporting agency that a consumer is disputing credit information. Id. ("[A]bsent a formal notice from a credit reporting agency, [a furnisher's] duty to investigate [i]s never triggered." (citations omitted)).

According to Plaintiffs, Wells Fargo violated the FCRA by giving inaccurate information to credit reporting agencies. Plaintiffs claim that Wells Fargo "knowingly and willfully continues . . . to furnish inaccurate information concerning the nature of the mortgage debt by continually reporting paid late, reporting mortgage in default, reporting mortgage loan in collections, and mortgage loan in foreclosure." Compl. ¶ 93.

Wells Fargo first argues that Plaintiffs' FCRA claim must be dismissed because Plaintiffs complained directly to Wells Fargo, not to a credit reporting agency. The Complaint alleges, however, that Plaintiffs sent letters of dispute to credit reporting agencies and to Wells Fargo, and that the credit reporting agencies in turn notified Wells Fargo of Plaintiffs' disputes. Id. ¶ 92. Accepting Plaintiffs' allegations as true, the Court finds that Wells Fargo's first argument lacks merit.

Wells Fargo next argues that, even if Plaintiffs can show that they contacted the credit reporting agencies, they fail to show that Wells Fargo acted "maliciously or willfully." Wells Fargo is mistaken. Plaintiffs need not plead malicious or willful intent to maintain a claim under § 1681s-2. The provision in the FCRA that references malicious and willful intent, § 1681(h)(e), addresses the unrelated issue of when the

FCRA preempts state law claims "in the nature of defamation, invasion of privacy, or negligence." 15 U.S.C. § 1681(h)(e). Indeed, the case Wells Fargo cites, Nwoke v. Countrywide Home Loans, Inc., 251 F. App'x 363 (7th Cir. 2007), is inapposite. There, the Seventh Circuit held that a negligence claim was preempted by the FCRA because the plaintiff failed to plead malice or willful intent. Section 1681(h)(e) does not provide a ground upon which to dismiss Plaintiffs' FCRA claim itself. Wells Fargo's motion to dismiss that claim is therefore denied.

**E. ECOA Claim Against Draper (Count IV)**

The ECOA makes it unlawful for any "creditor" to discriminate against "any applicant with respect to any credit transaction" on the basis of race and a number of other prohibited grounds. 15 U.S.C. § 1691(a). Under ECOA regulations, "[a] creditor shall mail or deliver a copy of the appraisal report promptly (generally within 30 days) after the creditor receives an applicant's request, receives the report, or receives reimbursement from the applicant for the report, whichever is last to occur." 12 C.F.R. § 202.14(a)(2(ii); see also 15 U.S.C. § 1691(e). Plaintiffs claim that Draper failed to provide them with a copy of the appraisal report, in violation of § 1691(e). Compl. ¶ 59. Plaintiffs allege that they sent written requests "within fourteen days of closing, and another one month later." Id. Therefore, at the latest, Plaintiffs' final written request for a copy of the appraisal report was sent one month and fourteen days after the loan closed on July 18, 2005, or approximately September 1, 2005.

Draper argues that Plaintiffs' ECOA claim is time-barred. The ECOA provides that no action shall be brought "later than two years from the date of the occurrence of the violation." 15 U.S.C. § 1691e(f). In this case, the alleged violation occurred on the

date Draper failed to provide the appraisal report. See, e.g., Wiltshire v. Dhanraj, 421 F. Supp. 2d 544, 557 (E.D.N.Y. 2005). Plaintiffs' final written request was sent, at the latest, on or about September 1, 2005. Under ECOA regulations, Draper had thirty days to respond, meaning that the cause of action accrued on or about October 1, 2005. Plaintiffs did not file the initial complaint in this case until April 6, 2009, well over two years after the ECOA cause of action accrued. Because Plaintiffs filed this action over two years after the date of the alleged violation, their ECOA claim is dismissed.[1]

## F. Fraud Claims (Counts V–VII)

Plaintiffs bring common law fraud claims against all Defendants. "To state a fraud claim under Illinois law, a plaintiff must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." Reger Dev., LLC v. Nat'l City Bank, 592 F.3d 759, 766 (7th Cir. 2010) (citing Redarowicz v. Ohlendorf, 441 N.E.2d 324, 331 (Ill. 1982)). Under Rule 9(b), Plaintiffs must state with particularity the circumstances constituting fraud, meaning that they must state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Windy City Metal, 536 F.3d at 668 (quotation omitted).

---

[1] Plaintiffs' ECOA claim is also deficient because it makes no mention of discrimination. The ECOA prohibits discrimination "with respect to any aspect of a credit transaction" on the basis of, *inter alia*, "race, color, religion, national origin, sex, or marital status." 15 U.S.C. § 1691(a). Plaintiffs have alleged only that they were not furnished with the appraisal report; Plaintiffs make no allegation that Draper's failure to furnish them with the appraisal report was the result of discrimination on these bases.

### 1. Fraud Claims against Draper (Count V)

Plaintiffs make two fraud claims against Draper. First, they allege that Draper employee Craig Opper told them "that they qualified for a refinance because their home had sufficient home value to borrow against." Compl. ¶ 61. Prior to the appraisal, Draper stated a predetermined home value on Plaintiffs' refinance application. Plaintiffs claim that Draper, knowing its statement of home value to be false, qualified them for refinancing. Plaintiffs further allege that Craig Opper told them that Draper's predetermined home value, along with a subsequent appraisal conducted by First Security National, were accurate determinations of Plaintiffs' home value. Plaintiffs maintain that Draper "knew that Plaintiffs were not qualified for a refinance and that an inflated home value was used to qualify us." Id. ¶ 62. Plaintiffs therefore allege that "[b]y knowingly misrepresenting and concealing the true value of the Plaintiffs' real estate, Draper fraudulently induced the Plaintiffs into accepting a mortgage refinance of our home, rendering the home unsaleable even for the bare amount of the mortgage . . . and putting at instant risk our financial security and personal property without our then realizing it." Id. Shortly after the closing, Plaintiffs sent Draper multiple written requests for a copy of the appraisal. Draper did not respond to Plaintiffs' requests and, as Plaintiffs allege, "actively and deliberately prevented the Plaintiffs from discovering the fraudulent misrepresentation by continuing to conceal it . . . throughout the duration of the refinance loan." Id. ¶ 63. Plaintiffs ultimately learned that their home value was "falsely stated" when "we needed to sell our home less than three years later and found that we could not sell, because our home was not worth anywhere near the amount we owed." Id.

In response, Draper contends first that Plaintiffs do not satisfy Rule 9(b) because they have not pled the "who" and "what" of the fraud. Draper provides no argument in support of this contention and the Court finds it to be without merit. As set forth in the allegations above, Plaintiffs plead specific facts as to both the who and what of the fraud.

Draper next argues that Plaintiffs' fraud theory "does not make sense" because there is "no causal connection between the appraisal and the ability to afford a loan." Draper's Mot. to Dismiss Pl.'s Second Am. Compl. 7. Again, Draper's argument is without merit at this stage. In a similar case in this District, the plaintiff alleged a joint effort by a mortgage lender and appraiser to defraud her by "falsely inflating the appraised value of her property with the intention that she would rely on that appraisal in deciding to finance the purchase and construction of her home through [the lender]." Gaudie v. Countrywide Home Loans, Inc., 683 F. Supp. 2d 750, 756 (N.D. Ill. 2010). The lender-defendant argued that the plaintiff's claims made "no sense" because the lender had no incentive to inflate the appraisal and approve the plaintiff for a loan that is not supported by sufficient collateral. Id. In response, the court found that, "[g]iven recent occurrences and trends in the failing housing market, [the lender's] argument falls flat." Id. at 757. After noting the growing criticism of lenders' practices with respect to appraisals, the court held that "[i]n light of the fact that a lender may be more incentivized by the increased fees and commission rates (for higher loans, late payments and prepayment penalties) associated with larger loan amounts than by insuring that a mortgage loan and the supporting appraisal truly reflect the fair market value of a property, [the lender's] argument is unavailing." Id.

So too here. Construing the Complaint in the light most favorable to Plaintiffs, accepting as true all well-pleaded facts alleged, and drawing all reasonable inferences in Plaintiffs' favor, the Court finds Plaintiffs' allegations of the fraudulent scheme to be sufficient at this stage. The Court notes, however, that implicit in Plaintiffs' allegation is that the lending institution had no interest in the ultimate preservation of its own capital. Draper's motion to dismiss Plaintiffs' fraud claim is denied.

Plaintiffs also allege in Count V, paragraphs 71-78, that Draper's use of MERS as a mortgagee was itself fraudulent. Compl. ¶ 71-78. These claims are without merit. Paragraphs 71-78 are therefore dismissed. See, e.g., In re Mortgage Elec. Registration Sys. (MERS) Litig., 744 F. Supp. 2d 1018, 1029 (D. Ariz. 2010) ("The MERS system is not fraudulent.").

### 2. Fraud Claim against E*Trade (Count VII)

Plaintiffs claim that E*Trade, through its representatives Chad and Jonathan Chevalle, "fraudulently induced us Plaintiffs to execute a HELOC agreement by misrepresenting the value of our home and knowingly concealing from us the fact that it was actually a personal loan." Compl. ¶ 88. According to Plaintiffs, E*Trade misrepresented to them that a HELOC "was a loan secured by home equity and that our home value was fairly appraised and was adequate consideration for a [HELOC]." Id. ¶ 87. Chad Chevalle allegedly told Plaintiffs that their home was worth $451,000 and that they had equity. Id. Plaintiffs maintain that he intended for them to rely on that determination of value in order to induce them into believing they qualified for a HELOC with E*Trade. Plaintiffs state that they believed the statement of home value and relied on it to their detriment. They claim that E*Trade inflated the value of their home and

invented equity that did not exist in order to "make it seem that we were qualified for a HELOC." Id. ¶ 88. Finally, Plaintiffs claim that, at settlement of the HELOC and throughout its duration, E*Trade has promised but intentionally failed to provide them with copies of the HELOC.

In response, E*Trade argues that Plaintiffs fail to plead fraud with particularity under Rule 9(b). E*Trade asserts that Plaintiffs' allegations are "purely conclusory" and that the appraisals are prepared for the lender, not the borrower. Like Draper, E*Trade argues that Plaintiffs' appraisal claim "makes no sense." Id. For the reasons set forth in Section F.1 above, this argument is unavailing. Plaintiffs' allegations of the "who, what, where and why" of the alleged fraudulent scheme are sufficient at this stage. E*Trade's motion to dismiss Count VII is therefore denied.

### 3. Fraud Claim against Wells Fargo (Count VI)

Plaintiffs allege that Wells Fargo fraudulently misrepresented that it owns the mortgage and therefore has no right to repayment of the Primary Loan. Wells Fargo – noting that this argument is "utterly baseless" in that the record establishes it as both the servicer and holder of the loan – argues that Plaintiffs have not supported the claim with sufficient facts to satisfy the plausibility requirement of Rule 8(a), let alone the particularly requirement of Rule 9(b). Wells Fargo is correct. Conclusory allegations that fail to set forth the time, place, and content of any alleged misrepresentations do not meet the requisite specificity under Rule 9(b). Goren v. New Vision Int'l, Inc., 156 F.3d 721, 730 (7th Cir. 1998). Plaintiffs fail, *inter alia*, to establish a basis for the claim, let alone to plead the identity of the person(s) who made the misrepresentation(s) or the time

or specific content of the misrepresentations. Plaintiffs' fraud claims against Well Fargo (Count VI) are therefore dismissed.

## G.  Quiet Title Claims (Count II)

Plaintiffs also seek to quiet title to the Subject Property. Plaintiffs claim that neither Wells Fargo nor MERS is the true owner or holder of the Primary Loan and that, because of this, neither has a lawful interest in the Subject Property. Compl. ¶¶ 40-42. Plaintiffs claim that E*Trade sold its interest in the HELOC, was paid in full for the debt, and therefore has no lawful interest in the Subject Property. Id. ¶¶ 44-45

Under Illinois law, an action to quiet title in property is "an equitable proceeding in which a party seeks to remove a cloud on his title to the property." Stahelin v. Forest Pres. Dist. of DuPage Cty., 877 N.E.2d 1121, 1135 (Ill. App. Ct. 2007) (citation omitted). "A cloud on title is said to be the semblance of a title, either legal or equitable, or a claim of an interest in lands, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce." Lakeview Trust & Sav. Bank v. Estrada, 480 N.E.2d 1312, 1327 (Ill. App. Ct. 1985) (quotation and citations omitted). "To prevail in a quiet title action, plaintiffs must establish title superior to that of defendants." Dudley v. Neteler, 924 N.E.2d 1023, 1026 (Ill. App. Ct. 2009) (quotation omitted).

Plaintiffs do not allege facts sufficient to support a finding that Defendants' interest in the Subject Property is "unfounded" or "inequitable to enforce." There is no plausible basis for the assertion that Wells Fargo is not the owner and holder of the Primary Loan. As Wells Fargo notes, a copy of Plaintiffs' mortgage and assignment to Wells Fargo is attached to the record. The Court does not accept Plaintiffs conclusory allegations and notes that their reliance on the Illinois Conveyances Act, 765 ILCS 5/30,

is unavailing.  Further, as E*Trade points out, Plaintiffs' quiet title claims also lack merit due to Plaintiffs' absence of a meaningful ability to tender their indebtedness and because the pending state foreclosure action may soon extinguish claims to the Subject Property. Plaintiffs' quiet title claims are therefore dismissed.

### III.  CONCLUSION

For the foregoing reasons, Counts I (TILA), II (quiet title), and IV (ECOA) are dismissed as to all Defendants.  Count III (RESPA) is dismissed as to the Notice of Transfer Claims against Draper and Wells Fargo, but the QWR claim against Wells Fargo survives.  Wells Fargo's motion to dismiss Count VIII (FCRA) is denied.  As to the fraud claims, Count VI (against Wells Fargo) is dismissed but Counts V and VII (against Draper and E*Trade) survive.  Additionally, in light of the aging nature of this case, any motions for summary judgment should be filed expeditiously and not later than October 31, 2011, with responses due in fourteen days and replies seven days thereafter.

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, Judge

United States District Court

DATED:  September 30, 2011